## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

**KAREN GABRIEL, as parent and next friend**
**of Infant John Doe,**                                                           **PLAINTIFFS**

**v.**                        **CASE NO.: 4:19-CV-663-KGB**

**PULASKI COUNTY SPECIAL**
**SCHOOL DISTRICT**                                                        **DEFENDANT**

### BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

The Plaintiffs, Karen Gabriel ("Gabriel"), as parent and next friend of Infant John Doe ("Infant Doe" or "Doe"), brought suit against Pulaski County Special School District (hereafter, "PCSSD" or the "District") alleging various causes of action related to Doe being prevented from playing high school basketball. The question of Doe's eligibility to play basketball arose after he transferred from one PCSSD school – Sylvan Hills High School ("Sylvan Hills") – to another – Mills University Studies High School ("Mills"). The Plaintiffs allege that actions taken by the District and certain PCSSD employees were motivated by race. The District denies that race played any part in its decision, and the Plaintiffs have provided no evidence to support the claims of racial discrimination that they contend are violations of Doe's rights under the Equal Protection clause, Due Process clause, and 42 U.S.C. § 1983. For the reasons set forth in this brief and the motion filed herewith, PCSSD requests this Court grant it summary judgment on all of the Plaintiffs' claims.

### STATEMENT OF MATERIAL FACTS

Infant John Doe ("Infant Doe" or "Doe") was a student at Sylvan Hills Middle and High School in Pulaski County Special School District ("PCSSD") during the 2017-19 school years. (Complaint, ¶ 6). During the 2018-19 school year, Doe was a 9th grade member of the basketball

team at Sylvan Hills High School ("Sylvan Hills"). (*See* Exhibit 1, Affidavit of Tracy Allen, "Allen Affidavit", ¶ 5). Following Doe's 9th grade year, Doe transferred from Sylvan Hills to another PCSSD school, Mills University Studies High School ("Mills"). *Id.* at ¶ 6. Doe was allowed to transfer from Sylvan Hills to Mills pursuant to PCSSD's intra-district transfer policy. (Answer, ¶ 7). Doe continued to reside in the Sylvan Hills attendance zone after his intra-district transfer to Mills. (*See* Ex. 1, Allen Affidavit, ¶ 7). At the time the Complaint was filed on September 24, 2019, Doe was a 10th grade student at Mills University Studies High School ("Mills"). *Id.* at ¶ 8.

School activities in Arkansas, including high school sports, are regulated by the Arkansas Activities Association ("AAA"), of which PCSSD is a member. *Id.* at ¶ 9. The AAA publishes rules governing participation in athletic activities in its annual handbook. *Id.* at ¶ 10. All PCSSD student-athletes are subject to AAA rules. *Id.* Article III of the 2019-20 AAA Handbook covers eligibility and states that "participation in competitive interscholastic activities as a part of a school's educational program is a privilege and not a right." *Id.* at ¶ 12; *see also*, Doc. 4-1, 2019-20 AAA Handbook, Rule 1 DOMICILE, p. 34. Regarding a student-athlete's domicile and eligibility to play following a change in domicile, the relevant provisions of Article III of the AAA Handbook state as follows:

    A.    A student's eligibility for interscholastic athletics shall be in the public school district of the parent's domicile. *See* Article III, Section 1(A)(1).

    B.    For eligibility purposes, all transfers must take place by July 1 before a student enters grades 7-10 and require that CSAP [Changing Schools/Athletic Participation] forms be signed for public and boarding schools. *See* Article III, Section 1(A)(4).

    C.    [A] complete (total) and bona fide change of domicile (move in good faith) shall occur when a student's parent(s) abandons their former home as a domicile and makes a permanent move into a home that is their sole domicile in another school district/attendance zone. A change of domicile shall be made with the intent that it is permanent. Two legal domiciles shall not be allowed for eligibility purposes under the complete and bona fide change of domicile rule. A

change of domicile for the purpose of creating interscholastic athletic eligibility shall not be considered a complete and bona fide change of domicile and the student shall be declared ineligible at all AAA schools for one (1) calendar year. *See* Article III, Section 1(C).

      D.      A student's eligibility for interscholastic athletics with respect to the domicile rule may be in the public school that the student is legally attending provided the transfer was by July 1 before a student enters grades 7-10 and the CSAP form has been completed and filed with the receiving district and AAA. *See* Article III, Section 1(D).

      E.      A student changing schools under the Freedom of Choice law, transferring other than a legal transfer (school board to school board) or any circumstance other than public school domicile rules 1 through 6 above, is assumed to have changed schools for athletic purposes if the student participates in athletics the previous year. *See* Article III, Section 1(F)(1).

      F.      To gain eligibility through . . . the transfer rule, the following criteria must be met by using the CSAP (Changing Schools/Athletic Participation) form. *See* Article III, Section 1(F)(3).

      G.      A Changing Schools/Athletic Participation (CSAP) document stating that the student was not recruited and did not change schools for athletic purposes must be signed prior to participation by: (a) the superintendent or designated administrator of the previous school; (b) the superintendent or designed administrator of the new school; (c) the parent(s) or legal guardian(s), witnessed by the new (receiving) school's administrator or a notary public. *See* Article III, Section 1(G)(1).

*See* Doc. 4-1, 2019-20 AAA Handbook, pp. 34-36.

During Spring 2019 and while Doe was playing basketball for Sylvan Hills, Plaintiff Gabriel complained to Sylvan Hills Principal Tracy Allen ("Allen") that she did not like Sylvan Hills Basketball Coach Kevin Davis and commented once or twice that Principal Allen, who previously coached the Mills basketball team, should be the coach. (*See* Ex. 1, Allen Affidavit, ¶¶ 3, 14). Allen interpreted her complaints as discontent with Coach Davis and the Sylvan Hills basketball program generally. *Id.* at ¶ 15. Allen does not recall Plaintiff Gabriel complaining about the educational process or academic programs offered by Sylvan Hills or mentioning the lack of a JROTC program at Sylvan Hills prior to transferring Doe to Mills. *Id.* at ¶ 16.

Following Doe's transfer to Mills, Allen spoke with Coach Davis regarding Doe's transfer. *Id*. at ¶ 17. Coach Davis told Allen that he had spoken with Doe, that Doe had told Coach Davis that he was transferring to Mills so that he could play basketball there, that Doe's mother and older brother wanted him to play for Mills Basketball Coach Raymond Cooper, and that Doe's brother had played on Coach Cooper's AAU team several years prior. *Id*. at ¶ 18.

Sometime during the Fall 2019 semester, Allen met with Plaintiff Gabriel, and she asked him to complete the AAA's CSAP form for Infant Doe. *Id*. at ¶ 19. Allen told Plaintiff Gabriel that he believed Doe had transferred for athletic reasons, that his belief was based on both Coach Davis's description of his conversations with Doe and Gabriel's previous comments to Allen expressing unhappiness with Coach Davis, and that for those reasons, he would not sign the CSAP form. (*See* Ex. 1, Allen Affidavit, ¶ 20). Allen recalls that Plaintiff Gabriel responded that Doe was 14 years old and that she was the person who was making the decision. *Id*. at ¶ 21. Allen reminded her of her previous complaints to him about Coach Davis and the basketball team and told her that his belief was not based solely on Doe's comments to Coach Davis. *Id*. Plaintiff Gabriel contends that she transferred Doe to Mills because she wanted him to participate in JROTC. (Complaint, ¶ 8).

Richard Doe, a white student, is identified by the Plaintiffs in their Complaint as having "transferred from Sylvan Hills to Cabot High School" and "participat[ing] in the Cabot athletic basketball program during the 2018-19 (sic) school year." (Complaint, ¶ 15). Richard Doe's family was domiciled in the Sylvan Hills attendance zone when he attended Sylvan Hills during the 2017-18 school year. (*See* Exhibit 2, Affidavit of Charles McNulty, "McNulty Affidavit", ¶ 5). Richard Doe's family permanently moved to Cabot prior to the 2018-19 school year, and their move constituted a "complete and bona fide change of domicile" for AAA purposes. *Id*. at ¶ 6. Richard

Doe resided in Cabot School District's attendance zone during the 2018-19 school year and therefore met the AAA's eligibility requirements when he played basketball in Cabot that year. *Id*. at ¶ 7. Plaintiff Gabriel mentioned another student who had left Sylvan Hills to go to Cabot during her meeting with Allen, but Allen was never asked to sign a CSAP form for Richard Doe. (*See* Ex. 1, Allen Affidavit, ¶¶ 22-23).

In an attempt to resolve the conflict presented by Plaintiff Gabriel's lawsuit, PCSSD Superintendent signed the CSAP form for Infant Doe after he completed his first semester of enrollment at Mills. (*See* Ex. 2, McNulty Affidavit, ¶ 8). After Superintendent McNulty signed the CSAP form, Infant Doe was permitted to play basketball at Mills during the Spring 2020 semester. *Id*. at ¶ 8.

## **ARGUMENT**

### I.     **Summary Judgment Standard**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be awarded to a party if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56. When ruling on a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party. *Meyers v. Nebraska Heath and Human Services*, 324 F.3d 655, 659 (8th Cir. 2003). However, the Court must look to the substantive law to determine whether an element is essential to a case, and only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Furthermore, a nonmovant must present more than a scintilla of evidence and must advance specific facts to create a genuine issue of material fact for trial. *F.D.I.C. v. Bell*, 106 F.3d 258, 263 (8th Cir. 1997). Mere speculation and conjecture is insufficient as a matter of law to survive

summary judgment. *See Schmidt v. City of Bella Villa*, 557 F.3d 564, 573-74 (8th Cir. 2009) (citing *Putman v. Unity Health Sys., Inc.*, 348 F.3d 732, 733-34 (8th Cir. 2003)).

## II.    Plaintiffs' Equal Protection claim

The Plaintiffs contend that Doe's right to equal protection under the law was violated when he was not allowed to play basketball at Mills following his transfer from Sylvan Hills, and that another similarly situated white student was treated differently. *See* Complaint, ¶¶ 14-18. PCSSD denies the Plaintiffs' allegations and states that the decision to deny Doe the opportunity to play basketball was based on AAA regulations, not racial discrimination. "Citizens are protected from 'arbitrary or irrational state action' by the Equal Protection clause." *Richmond v. Fowlkes*, 228 F.3d 854 (8th Cir. 2000). In order to show a *prima facie* violation of the Equal Protection clause based on discrimination, "the Plaintiffs must offer facts and evidence that constitutes proof of racially discriminatory intent or purpose." *Griffin v. Crossett Sch. Dist., Inc.*, 2008 U.S. Dist. LEXIS 50367, at *13 (citing *Foster v. Wyrick,* 823 F.2d 218, 221 (8th Cir. 1987)).

The Plaintiffs have produced no facts or evidence that white students were similarly situated to Infant Doe and treated differently. The single white student referenced in the Complaint is not similarly situated to Infant Doe. Richard Doe, the white student identified by Plaintiffs, allegedly "transferred from Sylvan Hills High School to Cabot High School" and then "participated in the Cabot athletic basketball program during the 2018-19 (sic) school year." *See* Complaint, ¶ 15. PCSSD does not dispute that description of Richard Doe's transfer. However, Richard Doe is not similarly situated to Infant Doe because Richard Doe's family moved from Sylvan Hills to Cabot. (*See* Ex. 2, McNulty Affidavit, ¶ 6). Richard Doe was therefore domiciled in Cabot in accordance with the AAA's Section III, Rule 1(C) provisions regarding a complete and bona fide change in domicile when he began playing basketball in Cabot. *Id.* Infant Doe, on

the other hand, continued to reside in Sylvan Hills while attending Mills and desiring to play basketball at Mills. (*See* Ex. 1, Allen Affidavit, ¶ 7). Richard Doe would only be similarly situated to Infant Doe if he had continued to reside in the Sylvan Hills attendance zone while playing basketball at Cabot.

PCSSD did not deny Doe the opportunity to play basketball because of his race. The AAA rules prohibited Doe from playing basketball at Mills without a CSAP form signed by either Principal Allen or Superintendent McNulty. Principal Allen refused to sign the form because of his sincere belief that Doe transferred to Mills for athletic, non-academic reasons. The District relied on the AAA rules, and those rules provide that eligibility should not be granted to students who transfer to one school for athletic purposes while remaining domiciled in another school attendance zone. The AAA rules, coupled with Allen's belief that Doe's transfer was sought for athletic reasons, evidence a rational, non-discriminatory basis for the decision to deny Doe the privilege of playing basketball at Mills. The Plaintiffs' evidence relates only to their own potential motivations for seeking the transfer – whether the Plaintiff desired to enroll Doe at Mills for athletic purposes or so he could participate in the JROTC program (*see* Complaint, ¶ 8) – but it does not evidence any discriminatory motive by PCSSD. The Plaintiffs have not produced evidence that racial discrimination was the basis for the decision to deny Doe the opportunity to play basketball at Mills, nor have they produced evidence that similarly situated white students were treated differently. For these reasons, the Plaintiffs' Equal Protection claim fails.

## II.   Due Process

To establish a procedural due process claim, the Plaintiffs must state facts that, if proven, would establish "the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Board of Regents v. Roth*, 408 U.S. 564, 569 (1972). While

Doe has a property and liberty interest in an education provided by the public school at which he is enrolled (*see Goss v. Lopez*, 419 U.S. 565, 573-574, 42 L. Ed. 2d 725, 95 S. Ct. 729 (1975)), Doe does not, however, have a constitutional right to play basketball. See *Ark. Activities Ass'n v. Meyer*, 304 Ark. 718, 805 S.W.2d 58, 61 (Ark. 1991). To the extent Doe's due process claim is that he has a constitutional right to be free from racial discrimination, his due process claim must fail for the same reasons his Equal Protection claim fails.

## III.   1983

In order to state a claim under Section 1983 of Title 42, the Plaintiffs must show that "rights secured by federal law or the Constitution are deprived under color of state law." *Lugar v. Edmondson*, 457 U.S. 922, 924 73 L. Ed. 2d 482, 102 S. Ct. 2744 (1982). For the reasons stated above, Doe did not suffer a constitutional violation. There is no evidence that the District denied Doe the opportunity to play basketball at Mills because of his race. Instead, the evidence shows that District officials genuinely believed that Doe was transferring for athletic reasons and that the basis for the District's prohibition on Doe playing basketball at Mills was compliance with AAA rules. Doe was ultimately allowed to play basketball at Mills during the Spring 2020 semester.

Additionally, a school district may be liable under Section 1983 "only if an official policy or custom caused a violation of [Doe's] constitutional rights." *Monell v. New York Dep't of Social Servs.*, 436 U.S. 658, 690, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978). The undisputed evidence shows that Allen did not sign the CSAP form because of his reliance on the AAA rules and his beliefs about the reasons Doe transferred. There is no evidence that application of the AAA policy to Doe violated his constitutional rights, nor that PCSSD had a policy of applying AAA rules differently depending upon the race of the student-athlete. Similarly, there is no evidence that the District treated Doe differently than similarly situated white students. All PCSSD student-athletes are

subject to the AAA rules. (*See* Ex. 1, Allen Affidavit, ¶ 9). PCSSD did not violate Doe's rights under Section 1983, and Doe was not subject to unconstitutional racial discrimination. The Plaintiffs' Section 1983 claim fails, and PCSSD is entitled to summary judgment on all of the Plaintiffs' claims.

## CONCLUSION

For the foregoing reasons, the Defendant, Pulaski County Special School District, is entitled to summary judgment on all claims brought by the Plaintiffs, Karen Gabriel, as parent and next friend of Infant John Doe.

Respectfully submitted,

BEQUETTE, BILLINGSLEY & KEES, P.A.
425 West Capitol Avenue, Suite 3200
Little Rock, AR 72201-3469
Phone: (501) 374-1107
Fax: (501) 374-5092
Email: jbequette@bbpalaw.com
Email: ckees@bbpalaw.com

By:   __**Cody Kees**_____
          Jay Bequette, Ark. Bar #87012
          Cody Kees, Ark. Bar #2012118