IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

KAREN GABRIEL, as parent and next friend
of Infant John Doe,                                                                  **PLAINTIFFS**

v.                       CASE NO.: 4:19-CV-663-KGB

PULASKI COUNTY SPECIAL
SCHOOL DISTRICT                                                                      **DEFENDANT**

### PCSSD'S STATEMENT OF UNDISPUTED MATERIAL FACTS

1. Infant John Doe ("Infant Doe" or "Doe") was a student at Sylvan Hills Middle and High School in Pulaski County Special School District ("PCSSD") during the 2017-19 school years. (Complaint, ¶ 6).

2. During the 2018-19 school year, Doe was a 9th grade member of the basketball team at Sylvan Hills High School ("Sylvan Hills"). (*See* Exhibit 1, Affidavit of Tracy Allen, "Allen Affidavit", ¶ 5).

3. Following Doe's 9th grade year, Doe transferred from Sylvan Hills to another PCSSD school, Mills University Studies High School ("Mills"). (Ex. 1, Allen Affidavit, ¶ 6).

4. Doe was allowed to transfer from Sylvan Hills to Mills pursuant to PCSSD's intra-District transfer policy. (Answer, ¶ 7).

5. Doe continued to reside in the Sylvan Hills attendance zone after his intra-district transfer to Mills. (Ex. 1, Allen Affidavit, ¶ 7).

6. At the time the Complaint was filed on September 24, 2019, Doe was a 10th grade student at Mills University Studies High School ("Mills"). (Ex. 1, Allen Affidavit, ¶ 8).

7.      School activities in Arkansas, including high school sports, are regulated by the Arkansas Activities Association ("AAA"), of which PCSSD is a member. (Ex. 1, Allen Affidavit, ¶ 9).

8.      The AAA publishes rules governing participation in athletic activities in its annual handbook. All PCSSD student-athletes are subject to AAA rules. (Ex. 1, Allen Affidavit, ¶ 10).

9.      Article III of the 2019-20 AAA Handbook covers eligibility and states that "participation in competitive interscholastic activities as a part of a school's educational program is a privilege and not a right." (Ex. 1, Allen Affidavit, ¶ 12; *see also*, Doc. 4-1, 2019-20 AAA Handbook, Rule 1 DOMICILE, p. 34).

10.     Regarding a student-athlete's domicile and eligibility to play following a change in domicile, the relevant provisions of Article III of the AAA Handbook state as follows:

   A.   A student's eligibility for interscholastic athletics shall be in the public school district of the parent's domicile. *See* Article III, Section 1(A)(1).

   B.   For eligibility purposes, all transfers must take place by July 1 before a student enters grades 7-10 and require that CSAP [Changing Schools/Athletic Participation] forms be signed for public and boarding schools. *See* Article III, Section 1(A)(4).

   C.   [A] complete (total) and bona fide change of domicile (move in good faith) shall occur when a student's parent(s) abandons their former home as a domicile and makes a permanent move into a home that is their sole domicile in another school district/attendance zone. A change of domicile shall be made with the intent that it is permanent. Two legal domiciles shall not be allowed for eligibility purposes under the complete and bona fide change of domicile rule. A change of domicile for the purpose of creating interscholastic athletic eligibility shall not be considered a complete and bona fide change of domicile and the student shall be declared ineligible at all AAA schools for one (1) calendar year. *See* Article III, Section 1(C).

   D.   A student's eligibility for interscholastic athletics with respect to the domicile rule may be in the public school that the student is legally attending provided the transfer was by July 1 before a student enters grades 7-10 and the CSAP form has been completed and filed with the receiving district and AAA. *See* Article III, Section 1(D).

      E.    A student changing schools under the Freedom of Choice law, transferring other than a legal transfer (school board to school board) or any circumstance other than public school domicile rules 1 through 6 above, is assumed to have changed schools for athletic purposes if the student participates in athletics the previous year. *See* Article III, Section 1(F)(1).

      F.    To gain eligibility through . . . the transfer rule, the following criteria must be met by using the CSAP (Changing Schools/Athletic Participation) form. *See* Article III, Section 1(F)(3).

      G.    A Changing Schools/Athletic Participation (CSAP) document stating that the student was not recruited and did not change schools for athletic purposes must be signed prior to participation by: (a) the superintendent or designated administrator of the previous school; (b) the superintendent or designed administrator of the new school; (c) the parent(s) or legal guardian(s), witnessed by the new (receiving) school's administrator or a notary public. *See* Article III, Section 1(G)(1).

*See* Doc. 4-1, 2019-20 AAA Handbook, pp. 34-36.

11. During Spring 2019 and while Doe was playing basketball for Sylvan Hills, Plaintiff Gabriel complained to Sylvan Hills Principal Tracy Allen ("Allen") that she did not like Sylvan Hills Basketball Coach Kevin Davis and commented once or twice that Principal Allen, who previously coached the Mills basketball team, should be the coach. (Ex. 1, Allen Affidavit, ¶¶ 3, 14).

12. Allen interpreted her complaints as discontent with Coach Davis and the Sylvan Hills basketball program generally. (Ex. 1, Allen Affidavit, ¶ 15).

13. Allen does not recall Plaintiff Gabriel complaining about the educational process or academic programs offered by Sylvan Hills or mentioning the lack of a JROTC program at Sylvan Hills prior to transferring Doe to Mills. (Ex. 1, Allen Affidavit, ¶ 16).

14. Following Doe's decision to transfer to Mills, Allen spoke with Coach Davis regarding Doe's transfer. (Ex. 1, Allen Affidavit, ¶ 17).

15. Coach Davis told Allen that he had spoken with Doe, that Doe had told Coach Davis that he was transferring to Mills so that he could play basketball there, that Doe's mother and older brother wanted him to play for Mills Basketball Coach Raymond Cooper, and that Doe's brother had played on Coach Cooper's AAU team several years prior. (Ex. 1, Allen Affidavit, ¶ 18).

16. Sometime during the Fall 2019 semester, Allen met with Plaintiff Gabriel, and she asked him to complete the AAA's CSAP form for Infant Doe. (Ex. 1, Allen Affidavit, ¶ 19).

17. Allen told Plaintiff Gabriel that he believed Doe was transferring for athletic reasons, that his belief was based on both Coach Davis's description of his conversations with Doe and Gabriel's previous comments to Allen expressing unhappiness with Coach Davis, and that for those reasons, he would not sign the CSAP form. (Ex. 1, Allen Affidavit, ¶ 20).

18. Allen recalls that Plaintiff Gabriel responded that Doe was 14 years old and that she was the person who was making the decision. Allen reminded her of her previous complaints to him about Coach Davis and the basketball team and told her that his belief was not based solely on Doe's comments to Coach Davis. (Ex. 1, Allen Affidavit, ¶ 21).

19. Plaintiff Gabriel contends that she transferred Doe to Mills because she wanted him to participate in JROTC. (Complaint, ¶ 8).

20. Richard Doe, a white student, is identified by the Plaintiffs in their Complaint as having "transferred from Sylvan Hills to Cabot High School" and "participat[ing] in the Cabot athletic basketball program during the 2018-19 (sic) school year." (Complaint, ¶ 15).

22. Richard Doe's family was domiciled in the Sylvan Hills attendance zone when he attended Sylvan Hills during the 2017-18 school year. (*See* Exhibit 2, Affidavit of Charles McNulty, "McNulty Affidavit", ¶ 5).

4

23. Richard Doe's family permanently moved to Cabot prior to the 2018-19 school year, and their move constituted a "complete and bona fide change of domicile" for AAA purposes. (Ex. 2, McNulty Affidavit, ¶ 6).

24. Richard Doe resided in Cabot School District's attendance zone during the 2018-19 school year and therefore met the AAA's eligibility requirements when he played basketball in Cabot that year. (Ex. 2, McNulty Affidavit, ¶ 7).

25. Plaintiff Gabriel mentioned another student who had left Sylvan Hills to go to Cabot during her meeting with Allen, but Allen was never asked to sign a CSAP form for Richard Doe. (Ex. 1, Allen Affidavit, ¶¶ 22-23).

26. In an attempt to resolve the conflict presented by Plaintiff Gabriel's lawsuit, PCSSD Superintendent signed the CSAP form for Infant Doe after he completed his first semester of enrollment at Mills. (Ex. 2, McNulty Affidavit, ¶ 8). After Superintendent McNulty signed the CSAP form, Infant Doe was permitted to play basketball at Mills during the Spring 2020 semester. (Ex. 2, McNulty Affidavit, ¶ 8).

Respectfully submitted,

BEQUETTE, BILLINGSLEY & KEES, P.A.
425 West Capitol Avenue, Suite 3200
Little Rock, AR 72201-3469
Phone: (501) 374-1107
Fax: (501) 374-5092
Email: jbequette@bbpalaw.com
Email: ckees@bbpalaw.com

By: __**Cody Kees**__
    Jay Bequette, Ark. Bar #87012
    Cody Kees, Ark. Bar #2012118